PATRICK M. DUGGAN  
Senior Trial Attorney  
Environmental Crimes Section  
U.S. Department of Justice  
150 M ST. NE,  
Washington, D.C. 20002  
Phone: (202) 598-9569  
Fax: (202) 514-8865  
Email: Patrick.Duggan@usdoj.gov

SARAH M. BROWN  
Trial Attorney  
Environmental Crimes Section  
U.S. Department of Justice  
150 M ST. NE,  
Washington, D.C. 20002  
Phone: (202) 532-3144  
Fax: (202) 514-8865  
Email: Sarah.Brown2@usdoj.gov

JEFFREY K. STARNES  
Assistant U.S. Attorney  
U.S. Attorney's Office  
P.O. Box 3447  
Great Falls, MT 59403  
119 First Ave. N., Suite 300  
Great Falls, MT  59401  
Phone: (406) 761-7715  
Fax:  (406) 453-9973  
Email:  jeff.starnes@usdoj.gov

ATTORNEYS FOR PLAINTIFF  
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT  
FOR THE DISTRICT OF MONTANA  
GREAT FALLS DIVISION

| UNITED STATES OF AMERICA, | CR 24-06-GF-BMM |
|---|---|
| Plaintiff, | AMENDED INFORMATION |
| vs. | CONSPIRACY<br>Title 18 U.S.C. § 371 (Count 1)<br>(Penalty:  Five years of imprisonment, a $250,000 fine or twice the gross gain or loss, and three years of supervised release) |
| ARTHUR "JACK" SCHUBARTH, | |
| Defendant. | |

|  | LACEY ACT TRAFFICKING<br>Title 16 U.S.C. § 3372(a)(2)(A) and<br>§ 3373(d)(1)(B) (Count 2)<br>(Penalty: Five years of imprisonment, a $250,000 fine or twice the gross gain or loss, and three years of supervised release) |
|---|---|

THE ASSISTANT ATTORNEY GENERAL OF THE ENVIRONMENT AND NATURAL RESOURCES DIVISON OF THE UNITED STATES DEPARTMENT OF JUSTICE AND THE UNITED STATES ATTORNEY FOR THE DISTRICT OF MONTANA CHARGE:

At all times material to this Amended Information:

## **INTRODUCTION**

1. The defendant, **ARTHUR "JACK" SCHUBARTH**, resided in the District of Montana and was the owner and operator of an alternative livestock facility in Montana, also known as a game farm, operating under the name "Sun River Enterprises, LLC" (hereinafter the "Schubarth Ranch"). The business engaged in the purchase, sale, and breeding of mountain sheep, mountain goats, and other ungulates with a primary purpose of marketing and selling live animals and genetic material (e.g., semen) to captive hunting operations, also known as game ranches or shooting preserves.

2. The Schubarth Ranch comprised of 215 acres, which included defendant **SCHUBARTH's** residence and various outbuildings. It was located on the Fairfield Bench, a high elevation prairie grassland extending eastward from the

Rocky Mountains, and was bordered by state, private, and federal lands. The geographic area includes National Forests and the Bob Marshall Wilderness Complex. A variety of wildlife species are native to the geographic area, including Rocky Mountain Big Horn Sheep.

3. Person A was a resident of Montana and was involved in the alternative livestock industry.

4. Person B was a resident of Texas and was involved in alternative livestock husbandry and commercial sales of livestock.

5. Person C was a resident of Minnesota and was involved in alternative livestock husbandry and commercial sales of livestock.

6. Person D was a resident of Texas and was involved in alternative livestock husbandry and commercial sales of livestock.

7. Person E was a resident of Texas and was involved in alternative livestock husbandry and commercial sales of livestock.

## BACKGROUND

8. Marco Polo argali sheep (*Ovis ammon polii*) are a species of sheep that live in high elevations of the Pamir Mountains region that spans Afghanistan, Pakistan, Kyrgyzstan, Tajikistan, and China. Argali sheep are listed as Threatened under the U.S. Endangered Species Act and are internationally protected under Appendix II of the Convention on International Trade in Endangered Species of

Wild Fauna and Flora (hereinafter "CITES").

9. Despite local and international protections, argali sheep are trophy hunted due to their large size and unique long spiraling horns. Argali sheep are believed to be the largest species of sheep in the world, regularly weighing more than 300 pounds. Argali horns are the largest of any wild sheep.

10. Marco Polo argali are most commonly hunted for sport in Tajikistan, Mongolia, and Kyrgyzstan.  All imports into the United States of argali trophies, parts, products, and specimens are tightly regulated, and require a CITES export permit from the country in which it was harvested in addition to a permit from the United States Fish and Wildlife Service ("USFWS") for import, possession, and other uses.

11. Rocky Mountain Bighorn Sheep (*Ovis canadensis*) is the largest species of wild sheep native to North America.  Argali sheep can be roughly twice the size of Rocky Mountain Bighorn Sheep.

12. Cloning is the process of making a genetically identical copy of a cell or organism.  In cloning animals, the donor animal's somatic cell, such as skin or tissue, provides DNA, the genetic information.  That DNA is then transferred into an egg cell, or oocyte, that has had its own DNA-containing nucleus removed. That egg is then allowed to develop into an early-stage embryo, which is implanted into the womb of an adult female or surrogate female animal.  If successful, the

adult female would give birth to an animal that has the same genetic make-up as the animal that donated the somatic cell. That young animal is referred to as a clone. Cloning may have adverse effects by reducing a population's genetic variability as well as impacts on wild and domestic populations.

13.     Sheep with large bodies and large horns are more valuable to hunters in captive hunting facilities and in the wild. For example, a bighorn ram lamb produced from a ram known to have especially large horns could be sold for a higher price as a breeder animal or as a "shooter" animal to a shooting preserve. One purpose of crossbreeding and hybridization of sheep is to enhance the desirable traits in offspring, such as body and horn size, thereby increasing the value of the animal.

## RELEVANT STATUTES AND REGULATIONS

14.     The Lacey Act, Title 16, United States Code, Section 3371 *et seq.*, makes it unlawful for any person to knowingly transport, sell, receive, acquire, or purchase, in interstate commerce, any wildlife, when the person knew that said wildlife was taken, possessed, transported, or sold in violation of federal laws or regulations. 16 U.S.C. § 3372(a)(1) and § 3373(d).

15.     The Lacey Act also prohibits any person from making or submitting any false record, account, label for or identification of wildlife that had been or was intended to be transported in interstate or foreign commerce. 16 U.S.C. §

3372(d) and § 3373(d)(3)(A)(ii).

16. Under CITES, species are protected according to a classification system known as "appendices." Appendix II of CITES consists of the species that may become threatened by extinction if trade in the species is not regulated. International trade in species listed in these appendices is monitored and regulated by permits and quotas.

17. In the United States, CITES is implemented through the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq*. The ESA and its implementing regulations make it unlawful for anyone to engage in trade in any specimens contrary to CITES or to possess any specimens traded contrary to CITES. 16 U.S.C. § 1538(c)(1).

18. The ESA independently lists animals as both endangered and threatened, and prohibits the import, export, transport, receipt, sale, and offer of sale, in interstate and foreign commerce, of species listed as endangered or threatened. 16 U.S.C. § 1538(a)(1).

19. The Marco Polo argali sheep was listed on CITES Appendix II in 1975 and was listed as threatened under the ESA in 1992, 50 C.F.R. §17.11(h).

20. In order to protect Montana's native wildlife and plant species, livestock, horticultural, forestry, and agricultural production, and human health and safety, Montana has deemed it necessary to prohibit certain exotic species from

being imported, possessed, or sold in Montana.  Mont. Code Ann. § 87-5-705.

21. Montana's list of prohibited exotic wildlife includes:

- Argali sheep (*Ovis amon*), Mont. Admin. R. 12.6.2215(4);

- Transcaspian urial sheep (*Ovis aries vignei*), Mont. Admin. R. 12.6.2215(4); and

- mouflon sheep (*Ovis aries musimon*), Mont. Admin. R. 12.6.1540.

22. A person may not purposely or knowingly sell, purchase, or exchange all or part of any game fish, bird, game animal, or fur-bearing animal in Montana except as provided by law.  Mont. Code Ann. § 87-6-206.

23. A person may not capture, take, or otherwise acquire any game animal in Montana for use on an alternative livestock ranch. Mont. Code Ann. § 87-4-418.

## COUNT 1

24. Paragraphs 1 through 23 of this Information are incorporated herein by reference as if set forth in their entirety.

## THE CONSPIRACY

25. Beginning on a date no later than January 25, 2013, and continuing through at least October 2022, in the District of Montana, and elsewhere, the defendant, **ARTHUR "JACK" SCHUBARTH**, knowingly combined, conspired, confederated, and agreed with others known and unknown , to commit offenses against the United States, that is:

a. To knowingly engage in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase wildlife, specifically argali sheep, with a market value in excess of $350, and to knowingly transport, sell, receive, acquire, and purchase said sheep in interstate commerce, knowing that the wildlife was taken, possessed, transported and sold in violation of and in a manner unlawful under the laws and regulations of the United States, specifically the Endangered Species Act (16 U.S.C. § 1538(a)(1)(A)), in violation 16, U.S.C. §§ 3372(a)(1) and 3373(d)(l)(B);

b. To knowingly engage in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase wildlife, specifically argali sheep, with a market value in excess of $350, and to knowingly transport, sell, receive, acquire, and purchase said sheep in interstate commerce, knowing that the wildlife was taken, possessed, and transported in violation of and in a manner unlawful under the laws of Montana, specifically Mont. Code Ann. § 87-5-705, in violation of 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(l)(B); and,

c. To knowingly engage in conduct involving the sale and purchase of, offer to sell and purchase, and commission of an act with intent to sell and purchase wildlife, specifically argali sheep, with a market value greater

than $350, and to knowingly make, and cause to be made, a false record, account, label, and identification of the argali sheep, which had been and were intended to be transported in interstate commerce in violation of 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A)(ii), and 18 U.S.C § 2.

## MANNER AND MEANS OF THE CONSPIRACY

26. The manner and means by which SCHUBARTH and his co-conspirators sought to accomplish the objects and purposes of the conspiracy included, among others, the following:

   a. **SCHUBARTH** engaged a third party to create a cloned argali sheep from argali parts hunted in the wild in Kyrgyzstan and maintained the genetic line at the third-party facility.

   b. **SCHUBARTH** and co-conspirators would perform laparoscopic artificial insemination ("LAP-AI") and other forms of artificial breeding to create larger and more valuable lines of argali sheep. The procedures were conducted on the Schubarth Ranch and elsewhere.

   c. **SCHUBARTH** and co-conspirators used electronic communications, including but not limited to Facebook, email, and text messages, to coordinate the sale and terms of transactions in wildlife, wildlife parts, and offspring; arrange for transport of wildlife in interstate commerce;

and discuss false documentation to hide the proper identification of prohibited wildlife.

OVERT ACTS

27. In furtherance of the conspiracy and in order to effect the objects thereof, **SCHUBARTH** and his co-conspirators committed the following overt acts, among others, in the District of Montana and elsewhere:

   a. **Overt Act 1:** On or about January 25, 2013, Person A entered the United States with biological tissue from a Marco Polo argali sheep that had been hunted in Kyrgyzstan. Person A did not declare the animal parts upon entry.

   b. **Overt Act 2:** On or about January 31, 2013, **SCHUBARTH** entered into a "Cell Storage Agreement" with a corporation for storage and preservation of the above-referenced tissue from a male "Marco Polo" sheep named "Rocky."

   c. **Overt Act 3:** On or about October 6, 2015, **SCHUBARTH** entered into an "Ovine Cloning Contract" to clone an unspecified number of Marco Polo sheep from the tissue. **SCHUBARTH** provided a deposit of $4,200 for the cloning.

   d. **Overt Act 4:** On or about November 22, 2016, **SCHUBARTH** received 165 cloned Marco Polo embryos at the Schubarth Ranch.

e. **Overt Act 5:** On or about May 15, 2017, a pure Marco Polo argali sheep male was born from the cloned embryos, which **SCHUBARTH** named Montana Mountain King ("MMK").

f. **Overt Act 6:** Starting in 2018 at the latest, **SCHUBARTH** harvested semen from MMK in order to inseminate ewes via LAP-AI to create Marco Polo argali hybrid offspring.

g. **Overt Act 7:** On or about October 16, 2018, **SCHUBARTH** shipped twenty straws of MMK semen from Montana to Person B in Texas.

h. **Overt Act 8:** On or about November 15, 2018, Person C transported twenty-six prohibited species of sheep from Minnesota to Schubarth Ranch to be artificially inseminated with MMK semen.

i. **Overt Act 9:** On or about November 18, 2018, Person C issued **SCHUBARTH** a $600 check for LAP-AI to be performed on his sheep using MMK semen.

j. **Overt Act 10:** On or about November 21, 2018, Person C transported fifteen prohibited species of sheep artificially inseminated with MMK semen from Schubarth Ranch to Minnesota.

k. **Overt Act 11:** On or about May 4, 2019, Person A transported one MMK offspring sheep from Person C's residence in Minnesota to Schubarth Ranch.

l. **Overt Act 12:** On or about November 5, 2019, **SCHUBARTH** shipped thirty-seven straws of MMK semen from Montana to Person B in Texas.

m. **Overt Act 13:** On or about November 5, 2019, **SCHUBARTH** shipped twenty-three straws of MMK semen from Montana to Person D in Texas.

n. **Overt Act 14:** On or about November 15, 2019, Person C transported forty-eight prohibited species of ewes from Minnesota to Schubarth Ranch to be artificially inseminated with MMK semen.

o. **Overt Act 15:** On or about May 4, 2020, **SCHUBARTH** offered to sell an offspring of MMK, named "Montana Black Magic" or "MBM," to Person D and Person E in Texas.

p. **Overt Act 16:** On or about July 13, 2020, **SCHUBARTH** agreed to sell Person D and Person E eleven sheep containing 25% MMK genetics for $13,200 and MBM for $10,000.

q. **Overt Act 17:** On or about July 15, 2020, Person E procured a Texas Animal Health Commission Certificate of Veterinary Inspection for the interstate export of forty-three sheep which were falsely declared as New Mexico Dahl Sheep.

r. **Overt Act 18:** On or about July 15, 2020, Person D and Person E transported forty-three falsely labeled sheep from Texas to Schubarth Ranch. The true species were prohibited in Montana.

s. **Overt Act 19:** On or about July 17, 2020, Person E issued **SCHUBARTH** a $23,000 check to purchase twelve MMK offspring.

t. **Overt Act 20:** On or about July 17, 2020, Person E procured a Montana Department of Livestock Certificate of Veterinary Inspection showing the transfer of MBM from **SCHUBARTH** in Montana to Person E in Texas. The Certificate identifies MBM as "Bighorn x".

u. **Overt Act 21:** On or about July 17, 2020, Person E procured a Montana Department of Livestock Certificate of Veterinary Inspection in order to transfer eleven MMK offspring to Texas. The Certificate falsely identified the sheep as "New Mexico Domestic sheep".

v. **Overt Act 22:** On or about July 17, 2020, Person D and Person E transported eleven falsely labeled sheep from Schubarth Ranch to Texas.

w. **Overt Act 23:** On or about November 22, 2020, Person C transported at least two MMK offspring from Schubarth Ranch to Minnesota.

    x.  **Overt Act 24:**  On or about February 1, 2021, **SCHUBARTH** sold two falsely labeled MMK offspring to Person C.  The Department of Livestock Certificate of Veterinary Inspection falsely listed the lamb as a "New Mexico Domestic."

    y.  **Overt Act 25:**  On or about February 22, 2021, **SCHUBARTH** and Person E discussed via electronic messages an appropriate name for the hybrid argali breed they were creating.  Person E stated "[Person D] said Black Argali.  He knows we can't."

All in violation of Title 18 United States Code, Section 371.

## COUNT 2

28.    Paragraphs 1 through 23 of this Indictment are incorporated herein by reference.

29.    On or about October 20, 2019, in the District of Montana and elsewhere, the defendant, **ARTHUR "JACK" SCHUBARTH**, did himself and through the actions of others, knowingly engage in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase wildlife, specifically bighorn sheep and parts thereof that had been hunted and harvested in the wild in Montana, with a market value in excess of $350, and did knowingly transport, sell, receive, acquire, and

purchase said wildlife in interstate commerce, knowing that the wildlife was taken, possessed, and transported in violation of and in a manner unlawful under the laws and regulations of Montana, specifically Mont. Code Ann. §§ 87-5-705 and 87-6-206.

All in violation of Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(l)(B).

DATED this 11th day of March 2024.

TODD KIM  
Assistant Attorney General  
Environment & Natural Resources Div.

JESSE A. LASLOVICH  
United States Attorney  
District of Montana

By: _____  
PATRICK M. DUGGAN  
Senior Trial Attorney  
SARAH M. BROWN  
Trial Attorney  
Environmental Crimes Section

By: _____  
JEFFREY K. STARNES  
Assistant United States Attorney